IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

WYATT FRAZER and DELLA MURPHY,
Individually,

       Plaintiffs,

v.

CITY OF EAST ST. LOUIS; ALVIN PARKS, JR., in
his individual and official capacity as Mayor of the
City of East St. Louis; and ROBERT BETTS, in his
individual and official capacity as City Manager for
the City of East St. Louis,

       Defendants.

No. 09-cv-802-JPG-SCW

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the motion for summary judgment filed by defendants City of East St. Louis ("City"), Alvin Parks and Robert Betts (Doc. 22). Plaintiffs Wyatt Frazer and Della Murphy have responded to the motion (Doc. 26), and the defendants have replied to that response (Doc. 27).

**I.**     **Summary Judgment Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving

party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

## II.     Facts

Viewed in the plaintiffs' favor, the evidence establishes the following relevant facts.

Plaintiffs Frazer and Murphy served on the City's Board of Fire and Police Commissioners ("Board") beginning in January 2006. There were three members on the Board, and each's membership term was two or three years. 65 ILCS 5/10-2.1-1. Board members are subject to termination for cause only after written notice of the cause charges and after an opportunity to be heard by the City Council. 65 ILCS 5/10-2.1-3. Although it had been proposed as part of City Ordinance No. 01-10115 that Board members receive a monthly honorarium of $250, that provision is marked "Delete" and is underlined in the version passed.

Nevertheless, the City paid Board members such an honorarium on various occasions when the City's finances allowed. It did not pay Frazer or Murphy.

One of the duties of the Board was to appoint officers and members of the City's fire and police departments. 65 ILCS 5/10-2.1-4. As a practical matter, the Board exercised this duty by maintaining an "eligibility list" of qualified applicants who had passed psychological, physical, drug and academic tests as well as background checks. The applicants were listed in the order of their test scores, and the City Manager selected and approved new police and fire department employees, in the order listed, whenever a vacancy and hiring funds became available. City officials expected the Board to meet at least once a month to accomplish this and other duties.

While on the Board, Frazer and Murphy came to believe the City was discriminating against whites in its hiring and firing police officers. The perceived discrimination manifested itself in a reluctance to hire white police officers and unfounded delays in swearing in Christopher Heatherly, a white police officer hired in December 2006 with Frazer and Murphy's support.

In addition, Frazer complained to defendant Mayor Parks when the City was on the verge of not hiring a qualified white police chief, Ronald Grimmings, that Frazer had contacted and convinced to apply for the position. Parks responded by saying he would never hire a white police chief for the City. On other occasions, Frazer spoke to Parks, Betts and other City officials about allegedly discriminatory hiring and firing practices, but he did not complain to any outside agency or authority about those practices. Frazer testified in his deposition that during these conversations he was speaking in his capacity as a Board member, but he now contends he was speaking in his capacity as a private citizen.

As for Murphy, in a September 2007 meeting with Parks, Betts, other City officials, Frazer and Heatherly on the day Heatherly was to be sworn in as a police officer, she objected when Parks accused Heatherly of being a racist and hating African-Americans. Frazer also adamantly defended Heatherly's swearing in and argued that the City violated Heatherly's civil rights by accusing him of racism. Murphy testified that she was speaking in her capacity as a Board member and as a citizen of the City when she made her objection. Like Frazer, she did not contact any outside agency to complain of discrimination by the City.

After December 2006, when Heatherly was hired with Frazer and Murphy's support, the defendants began interfering with the Board's meetings. Specifically, they failed to pay Board members the monthly $250 honorarium, refused to authorize overtime pay for the Board's secretary, Janet Battle, to enable her to attend and take minutes at Board meetings, failed to provide space for meetings, and threatened to remove Frazer and Murphy from the Board. The Board stopped meeting after the December 2006 meeting. During that time, the eligibility list expired.

In October 2007, Parks and Betts recommended the City Council dismiss the Board because the Board was not meeting regularly, maintaining the eligibility list, holding disciplinary hearings or maintaining contact with City officials. Letters from Betts dated October 9, 2007, alerted Frazer and Murphy to the removal recommendation and its reasons and that the recommendation would be presented to the City Council on October 11, 2007. Neither Frazer nor Murphy received the letters before the hearing. At a hearing on October 17, 2007, the City Council dismissed the Board. Parks then reappointed the third Board member to the newly constituted Board but declined to reappoint Frazer and Murphy.

4

In October 2009, Frazer and Murphy brought this lawsuit alleging a claim under 42 U.S.C. § 1983 for retaliation in violation of their First Amendment free speech rights to speak out against discriminatory hiring practices (Count I), a claim under 42 U.S.C. § 1985(3) for conspiring to violate those rights (Count II), a claim under 42 U.S.C. § 1981 for retaliation for opposing racially discriminatory practices (Count III) and a claim for failure to pay monthly stipends in violation of City Ordinance No. 01-10115 (Count IV). The plaintiffs concede in their response to the defendants' summary judgment motion that they cannot prove Count II, so the Court will grant summary judgment for the defendants on that count.

As for the other counts, the defendants ask for summary judgment on Count I on the grounds that the plaintiffs' speech was not protected by the First Amendment, on Count III on the grounds that the plaintiffs were removed for a reason other than retaliation, and on Count IV on the grounds that City Ordinance No. 01-10115 does not require payment of a stipend.

**III.    Analysis**

    A.    <u>Count I:  First Amendment</u>

In order to prove a claim that a defendant retaliated against a plaintiff for his exercise of his First Amendment speech rights, the plaintiff must show, among other things, that the speech in question was constitutionally protected. *Chaklos v. Stevens*, 560 F.3d 705, 711 (7th Cir. 2009). Whether speech is constitutionally protected is a question of law for the Court, not a question of fact. *Connick v. Myers*, 461 U.S. 138, 148 n. 7 (1983).

The defendants here claim Frazer's and Murphy's speech did not meet this requirement. They rely primarily on *Garcetti v. Ceballos*, 547 U.S. 410 (2006). *Garcetti* noted that public

5

employees[1] are entitled to the free speech protections of the First Amendment when they speak as citizens on matters of public interest. *Id.* at 417 (citing *Connick*, 461 U.S. at 147; *Pickering v. Board of Educ.*, 391 U.S. 563, 586 (1968)). However, *Garcetti* held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. In *Garcetti*, the speech in issue was a memorandum the plaintiff wrote as part of the job he was employed to do and was therefore clearly not constitutionally protected. *Id.* *Garcetti* did not, however, articulate a comprehensive framework for determining when speech is pursuant to employment duties but did say that the inquiry should be a practical one, not limited by formal job descriptions. *Id.* at 424-25.

The Court of Appeals for the Seventh Circuit has provided some guidance to implementing this inquiry. It has stated that the Court should take a practical view of the facts, "looking to the employee's level of responsibility and the context in which the statements were made." *Abcarian v. McDonald*, 617 F.3d 931, 937 (7th Cir. 2010) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1092 (7th Cir. 2008)), *cert. denied*, No. 10-913, 79 U.S.L.W. 3538 (Mar. 21, 2011). Relevant factors can include to whom the speech was directed and the speech's subject matter, although neither factor is dispositive. *See Garcetti*, 547 U.S. at 420-21; *see also Chaklos*, 560 F.3d at 712. However, a plaintiff cannot avoid *Garcetti*'s implications simply by stating that he spoke as a citizen. *Tamayo*, 526 F.3d at 1092.

---

[1] All parties proceed as if Frazer and Muphy were employees of the City, so the Court assumes that they are for the purposes of this motion.

Frazer's and Murphy's speech regarding hiring of police officers was not in their capacities as citizens. In making this judgment, the Court notes that the official "job description" of Board members is limited to maintaining a list of eligible fire and police officers in the order of their relative qualifications, but the practical scope of the job concerned the broader issue regarding hiring those officers. Inherent to the responsibility to maintain the eligibility list is an interest in ensuring City officials did not effectively alter the list by hiring candidates out of order based on irrelevant, and possibly unlawful, factors such as race. Thus, Frazer's and Murphy's objections to hiring police officers on the basis of race as opposed to the Board's eligibility list fell within their job duties and were not constitutionally protected. The Court will grant summary judgment for the defendants on the plaintiffs' claims in Count I based on those statements.

As for Frazer's discussions with Parks regarding hiring Grimmings as the chief of police, that is a closer call. Clearly Frazer had an interest in the East St. Louis Police Department which he was able to exercise by being a Board member. He also had access to Parks and Betts by virtue of his position on the Board to express his opinions on matters such as who should be hired for the position of chief of police. He also apparently believed his status as a Board member gave him a legitimate platform upon which to express his opinion about candidates for the chief of police. His duties for the City, though, did not include providing input into the selection of police chief, and his comments to Parks regarding Grimmings did not touch on matters under the Board's jurisdiction, or even under its sphere of concern – hiring officers. Thus, Frazer's comments regarding selection of the chief of police were not pursuant to his

professional responsibilities and are protected by the First Amendment. To the extent Count I is based on that speech, it may proceed to trial.

      B.      <u>Count III: Retaliation for Opposing Discrimination</u>

Frazer and Murphy bring this claim under 42 U.S.C. § 1981 for retaliation for speaking out against discriminatory hiring practices. Section 1981 is "a broad-based prohibition (and federal remedy) against racial discrimination in the making and enforcing of contracts." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 393 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008). It provides, in pertinent part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). The statute further defines making and enforcing contracts to mean "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.: 42 U.S.C. § 1981(b). Included in § 1981's prohibition on discrimination is a prohibition on retaliation by those who complain of race discrimination against others. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (citing *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969)).

To withstand summary judgment on a retaliation claim[2], a plaintiff may use a direct method or an indirect, burden-shifting method. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 687 (7th Cir. 2010); *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007). Under

---

[2]Title VII jurisprudence provides the appropriate framework for examining a § 1981 claim. *See Johnson v. City of Fort Wayne*, 91 F.3d 922, 940 (7th Cir. 1996) ("Although section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical.").

8

the direct method, the plaintiff must present evidence that (1) he engaged in a statutorily protected activity, (2) the employer took an adverse action, and (3) there was a causal connection between the two. *Hobbs v. City of Chi.*, 573 F.3d 454, 463 (7th Cir. 2009); *Boumehdi*, 489 F.3d at 792. The adverse action must be something that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

Under the indirect method, a plaintiff must first establish a *prima facie* case by showing that (1) he engaged in a statutorily protected activity, (2) he performed his job according to his employer's legitimate expectations, (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 559 (7th Cir. 2004). There is no need to show a causal connection using the indirect method. *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004). If the plaintiff makes this showing, the burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. *Hudson*, 375 F.3d at 559. If the defendant is able to provide evidence of such a reason, the burden shifts back to the plaintiff to show that the articulated reason is actually a pretext for discrimination. *Id.*

The defendants argue that all Board members, including Frazer and Murphy, were removed for cause not because they opposed racially discriminatory hiring practices but because they were not performing their job as a Board by meeting monthly, maintaining the hiring eligibility list, holding disciplinary hearings for existing officers and addressing officer grievances. Although the defendants do not specify to which component of which method of

9

proof their argument is directed, the Court assumes they are attempting to establish, under the indirect method, that Frazer and Murphy cannot prove that they were performing to the City's legitimate expectations and that there was a legitimate, non-discriminatory reason for removing them from the Board.

There is sufficient evidence in the file for a reasonable jury to find that the Board was prevented from holding regular meetings at which its business could be done because the defendants failed to provide space for the meetings and prevented Battle, the Board's secretary, from attending the meetings by declining to pay her the overtime necessary to attend. This all began shortly after Frazer and Murphy backed the decision to hire Heatherly in December 2006. A reasonable jury could find that where City officials failed to provide necessary space and staff for Board meetings after December 2006, they could not legitimately expect the Board to meet.

Similarly, the defendants' role in preventing the meetings is enough to create a question about whether the Board's non-feasance was the real reason for removing its members. A municipality cannot prevent a board from meeting, then legitimately terminate the board for failing to meet. Furthermore, the removal was recommended in early October 2007, about two weeks after an emotionally-charged September 2007 confrontation in which the plaintiffs charged the defendants with race discrimination, although the non-feasance had apparently been going on for around nine months. This suspicious timing, along with the fact that the City rehired the one Board member who did not openly oppose the alleged race discrimination, is sufficient to allow a reasonable jury to infer that the plaintiffs' objection to perceived race discrimination was the real reason for their removal from the Board. Accordingly, summary judgment is not warranted on Count III.

C. <u>Count IV: Payment of Honoraria</u>

The plaintiffs seek payment under City Ordinance No. 01-10115 of a $250 per month honorarium for each month they served on the Board. The defendants argue that the ordinance did not provide any such payment because it was deleted from the version that was approved by the City Council in 2001. Their evidence consists of a copy of the ordinance with the honorarium provision underlined and preceded by the handwritten word, "Delete." No testimony explains the meaning of these markings, and the Court finds them ambiguous. Did they mean the provision was deleted from the ordinance before it passed? Did they mean to delete that provision in a revised ordinance in the future? In any case, the ordinance in and of itself does not establish the defendants' right to judgment as a matter of law. For this reason, the Court cannot grant summary judgment on Count IV.

**IV. Other Matters**

As noted in footnote 1, the Court has questions about whether the plaintiffs' relationship to the defendants was one of employment – or analogous enough to it – such that caselaw from the employment context provides the relevant rule of law. It is important to clarify this issue before this case goes to trial in front of a jury. Accordingly, the Court will order further briefing on this issue.

The Court further notes that the parties have declined to participate in a settlement conference because to do so would be fruitless up to this point. However, in a recent motion, they have indicated that if this case does proceed to trial, settlement discussions may be more productive. In light of the Court's rulings in this order, the Court recommends the parties conduct their own settlement discussions with dispatch or, alternatively, contact Magistrate

Judge Stephen C. Williams to determine if he can be of assistance in settling this matter before trial. The Court will deny the parties' joint motion to continue (Doc. 34), and this case will proceed to trial as scheduled.

## V. Conclusion

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** the defendants' motion for summary judgment (Doc. 22). The motion is **GRANTED** to the extent it seeks summary judgment on plaintiff Della Murphy's claims in Count I, plaintiff Wyatt Frazer's claims in Count I that do not rest on his speech about hiring a chief of police, and all claims in Count II. The motion is **DENIED** in all other respects;

- **DENIES** the parties' joint motion to continue the trial (Doc. 34);

- **ORDERS** that the parties shall file on or before the April 22, 2011, Final Pretrial Conference briefs on the question of whether employment law provides the appropriate rule of law for Counts I and III. No brief shall exceed seven pages; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED: April 6, 2011.**

                                       s/ J. Phil Gilbert
                                       **U.S. District Judge**